FOR THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF NEW MEXICO

WILLIAM N. GRIFFIN,

      Plaintiff,

      v.                                    CIV. No. 13-799 JB/GBW

DANIEL A. BRYANT, *et al.*

      Defendants.


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    This matter is before the Court on Defendant's Motion for Summary Judgment.
*Doc. 16*.   Having reviewed the parties' briefing (*docs. 17, 19*) and the relevant law, I
recommend that the Court GRANT the Motion in part and DENY it in part.

I.    **BACKGROUND**

    Plaintiff William Griffin brings suit under 42 U.S.C. § 1983 for violation of his
First Amendment rights. The action arises from his legal representation of the Rosalie
Ivey family in challenging a permit granted to the Ivey family's next door neighbors in
2009.  *Doc. 1* ¶¶ 20, 22, 28.  In July 2008, Ruidoso suffered a severe flood, causing the
destruction of the dirt road adjacent to the Ivey property. *Id.* ¶ 22. After the flood, the
Ivey family, in an effort to avoid a recurrence of the incident, sought to reroute the road
when it was rebuilt in order to move it away from the flood plain.  *Id.* ¶ 23.  While
undertaking this project, the Ivey family commissioned a study on the property in

question that indicated the parameters of the Federal Emergency Management Agency

(FEMA) "100 year flood-plain" that affected their property.  *Id.* ¶ 24.

On or about May 9, 2011, the Village of Ruidoso issued a permit to the Ivey

family's next door neighbor that allowed the neighbor to build a "two-foot wide, four-

foot high, seventy-foot long" water diverter that the Iveys believed would have the

effect of diverting floodwater directly onto their property.  *Id.* ¶¶ 28-30.  Plaintiff, on

behalf of the Ivey family, initially contacted Defendant Dan Bryant, an attorney for the

Village of Ruidoso, via letter on December 16, 2011, stating his belief that this permit

was not in compliance with FEMA regulations.  *Id.*  ¶ 31.  On December 28, 2011,

Defendant Bryant responded, disagreeing with Plaintiff's allegations.  *Id.* ¶ 32.

On at least three occasions during 2012, pursuant to the applicable Village of

Ruidoso Village Council Resolution,[1] Plaintiff requested placement on the next Council

meeting agenda to discuss this issue at the meeting.  Each request for agenda placement

was denied.  Nonetheless, Plaintiff had the opportunity to address the Council during

the "Public Input" portions of any Council meeting.  In fact, on at least four separate

occasions, Plaintiff attended Council meetings and spoke during the "Public Input"

portions.  However, Plaintiff's comments at those meetings were focused on the denial

of his agenda placement requests rather than the development issue.

---

[1] Throughout of the course of 2011 and 2012, the Village of Ruidoso passed four separate resolutions, beginning with Resolution 2011-02, addressing the procedures pertaining to Village of Ruidoso City Council meetings, as discussed in Section III (Undisputed Facts), *infra*.  Each of these Resolutions, except as delineated in Section III and Section IV(Analysis), *infra*, is identical.

Plaintiff's complaint charges that Defendants violated, and conspired to violate, his First Amendment rights by placing an unconstitutional prior restraint on his ability to speak at the Village of Ruidoso Council meetings when they failed to place him on the agenda despite his requests which complied with the relevant Council Resolution. His first cause of action alleges that Section 1 of the operative Resolution sets forth criteria for being placed on the official agenda, and that by failing to put Plaintiff on the agenda in spite of his conforming request, the Council subjected his speech to an unconstitutional prior restraint.  In other words, Plaintiff argues that his First Amendment rights were violated simply by the Council's failure to put him on the official agenda, regardless of whether he was allowed to speak at another point in the meeting. His second cause of action alleges that the Defendants conspired to implement this illegal prior restraint.  His third count is subdivided into two sections: the first seeks a declaration that the Resolution's provision regarding the placement of citizens on the official agenda (Section 1) is void for vagueness, and the second seeks a declaration that the "no negative mention" public input provision (Section 5) be found unconstitutional as censorship.  His fourth count seeks an injunction (a) requiring all citizen agenda placement requests be honored if they comply with the Resolution, and (b) prohibiting the enforcement of the "no negative mention" provision.  Defendants filed their motion for summary judgment on the basis of qualified immunity on October 14, 2013.  *Doc. 16.*  Briefing was complete on November 11, 2013.  *Doc. 21.*

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the

threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

## III.   UNDISPUTED FACTS

1.   The Village Council is the governing body of the Village of Ruidoso. *Doc. 16* at 3.

2.   On January 11, 2011, the Village Council passed Resolution 2011-02, which set forth the policies and procedures for meetings of the Village Council. *Doc. 16, Ex. 1-A.*

3.   Section 1 of Resolution 2011-02 addresses the preparation of the agenda. It included a provision explaining how citizens could be placed on the official agenda of Village Council meetings, at Section 1(B)(4). This section explains that "public who wish to be placed on the regular agenda . . . must submit a detailed written summary of the items to be presented and discussed . . . . [A]t the pre-agenda meeting [of the Village Clerk and Mayor], it will be determined if the

item will be placed on the agenda for the next meeting or it will be referred to

Staff, Workshop, or Village Boards and Commissions." *Id.*[2]

4.  While the Resolution obviously envisions that items on the official agenda will be

discussed in some fashion, there are no provisions which dictate how agenda

items are discussed during the meeting.

5.  Any individual who wants to address the Village Council at the meeting

regarding an item that is not on the agenda has the opportunity to speak during

the "Public Input" portion of the meeting.

6.  Speakers during the "Public Input" portion must follow the guidelines set out in

Section 5 of the Resolution. *Id.*, Section 5(I); *Doc. 16*, Ex. 1-D, Section 5(F)(f).[3]  As

relevant here, the guidelines require that the speaker: (1) is limited to five

minutes,[4] and (2) may not make "negative mention of Village Personnel, or

---

[2] One of Plaintiff's objections to Defendants' "undisputed" facts should be addressed here.  The governing Resolution expressly provides that the Village Clerk and Mayor will determine whether a requested item will be on the agenda.  This provision clearly envisions that they may decide NOT to include a requested item on the agenda.  In his Response, Plaintiff notes a factual dispute because "there is no express provision for denial of a request for placement on the Village agenda." *Doc. 17* at 22.  Notwithstanding this stated dispute, Plaintiff clearly does not claim that the Village Clerk and Mayor lacked the authority to deny agenda placement requests.  In fact, his argument is that they are "grant[ed] unbridled discretion … to decide whether to grant a request to speak on the Village Agenda." *Doc. 17* at 19.  Given the context of Plaintiff's briefing, I interpret the noted objection to be meant to highlight that there is no criteria laid out which would govern the decision of whether to put a requested item on the agenda.

[3] The operative Resolution has been modified several times through superseding Resolutions.  Except as noted below, the relevant provisions remain the same except for organizational changes.

[4] As noted below, prior to the May 29, 2012, Resolution, the speakers were permitted an initial time of three minutes which could be expanded an additional two minutes with the consent of the Council.  After that Resolution passed, speakers were simply given five minutes.

staff." *Id*.[5]  Non-compliant speakers will be "declared out of order and will

immediately cease continued comment." *Id*.

7.  On September 13, 2011, the Village Council passed Resolution 2011-27, which

superseded Resolution 2011-02. *Doc. 16*, Ex. 1-B.

8.  On January 20, 2012, Plaintiff requested placement on the agenda for the January

31, 2012, meeting.  *Doc. 1*, ¶ 42.   Plaintiff indicated that he wished to discuss

"the issue of development within the FEMA-defined floodplain." *Doc. 1*, Ex. A.

Plaintiff indicated that he wanted to discuss what he saw as a conflict between

FEMA regulations / state statutes, and "approvals granted by Village staff for

significant development in the … floodplain." *Id*.   Plaintiff sought to "deliver a

15 minute talk."  The request was denied.  *Id.*, ¶ 45.

9.  On March 12, 2012, the Village Council passed Resolution 2012-09, which was

designed to supersede Resolution 2011-27.  The relevant provisions remain

unchanged.  *Doc. 16*, Ex. 1-C.

10. On May 29, 2012, the Village Council passed Resolution 2012-16, which

superseded Resolution 2012-09.[6] *Id.*, Ex. 1-D.  Portions of the relevant provisions

---

[5] The current Resolution has added "the Governing Body" to this list.  *Doc. 16*, Ex. 1-D, Section 5(F)(f).
[6] Strangely, Plaintiff disputes the assertion that Resolution 2012-16 superseded Resolution 2012-09.  *Doc. 17* at 23.  His basis is that he "does not have enough information" about the assertion that subsequent Resolutions supersede prior ones, "and thus Plaintiff disputes this assertion of fact." *Id*. Despite Plaintiff's objection, the express terms of Resolution 2012-16 state that it supersedes Resolution 2012-09.  Given that Plaintiff does not dispute the authenticity of Exhibit 1-D as an accurate copy of Resolution 2012-16, the record is clear on this dispute.  As such, the Court can consider it an established fact for the purposes of the summary judgment motion.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

described above were slightly modified, but remain materially similar.[7]  Of note, speakers now would be allowed five minutes without the need for Council approval for the final two minutes.  *Id*., ¶5(F)(g).  Also, the "negative mention" prohibition was expanded to include "the Governing Body" as well.  *Id*., ¶5(F)(f).  Finally, the Resolution clarified[8] that "the Governing Body or staff shall not comment or engage in discussion during the public input period."  *Id*.

11. During August and September 2012, Plaintiff submitted a letters to the editors of local newspapers describing his concerns that approvals granted by Village staff for significant development in the floodplain violated FEMA regulations and other laws.  *Doc. 1*, ¶¶ 54, 55.  One of those newspapers, the Ruidoso Free Press, published the letter in its September 18, 2012, edition.  *Id*., ¶ 55.[9]

12. On September 24, 2012, Plaintiff made a request to be placed on the public agenda of October 9, 2012, Council meeting.  *Doc. 1*, ¶¶ 56.  Plaintiff asked to "make a presentation to the Village council focusing on the federal and state laws and regulations, and specific local ordinances, which must be adhered to in order for Ruidoso to comply with federal flood insurance program guidelines."  *Doc. 1*,

---

[7] Other less relevant changes included (i) a clarification that "Public Input" speakers could address matters that were included on the agenda as well as those which were not; and (ii) requirements about the residency of "Public Input" speakers.  *Doc. 16*, Ex. 1-D, ¶¶ 1(B)(5); 5(F).

[8] It appears that this restriction had been implicit through Section 4 which always provided that "[i]tems for discussion can only be inclusive and limited to those listed on the Agenda as presented before Council and the public.  This is to comply with the proper public notice under the State of New Mexico Open Meetings Act."  *Doc. 16*, Exs. 1-B, 1-C, 1-D.

[9] Plaintiff disputes the legal conclusion that local newspapers constitute an "alternative channel of communication," but does not dispute these facts.  *See doc. 17* at 23.

Ex. D.  Plaintiff explained that he believed that certain development approvals violated such rules.  *Id*.  Plaintiff asked to "deliver a 15-20 minute presentation." *Id*.  The request was denied.  *Id*., ¶ 57.

13.  On November 13, 2012, Plaintiff attended the Village Council meeting.  He spoke during the public input section stating that he had clients who owned property "affected by FEMA, State, and Local Ordinances" and complained he was denied the right to make a presentation to the Village Council.  *Doc. 16*, Ex. 1-E.  Notwithstanding his focus on the alleged denial of his right to make a presentation, there is no evidence in the record that Plaintiff was prevented from addressing the main points from his proposed presentation.

14. On November 14, 2012, Plaintiff made a request to be placed on the public agenda of December 11, 2012, Village Council meeting.  *Doc. 1*, ¶¶ 62, 63.  The request echoed his September request only now he sought to "deliver a 20-25 minute presentation."  *Doc. 1*, Ex. F.  While the request to be placed on the agenda was denied, Plaintiff was advised that the Village Council would schedule him for ten minutes (double the otherwise permitted amount) during the "Public Input" period.  *Doc. 1*, Ex. G.  Aside from cautioning Plaintiff not to make personal allegations of wrongdoing against Village employees, Plaintiff was not prohibited from addressing the main points from his proposed presentation.  *Id*.

15. On December 11, 2012, Plaintiff attended the Village Council meeting.  Plaintiff spoke during the "Public Input" period.  However, instead of taking advantage of the ten minutes allotted to him to make a presentation on the development issue, Plaintiff again complained about not being put on the agenda.  *Doc. 17* at 23.  Plaintiff argued that ten minutes was insufficient for his presentation, yet he also found fault with giving him preferential treatment by allowing him the additional five minutes.  *Doc. 16*, Ex. 1-F.  Notwithstanding his focus on the alleged denial of his right to make a presentation, there is no evidence in the record that Plaintiff was prevented from addressing the main points from his proposed presentation.

16. On January 29, 2013, Plaintiff attended the Village Council meeting.  Plaintiff spoke during the "Public Input" period.  He "warned [the] Council about the potential of legal problems regarding structures that were allowed to be built within the 100-year floodplan, despite a clear admonition from the Federal Emergency Management Administration (FEMA)…."  *Doc. 16*, Ex. 1-G.  Plaintiff also again complained that his freedom of speech was being denied by the Council's refusal to put him on the agenda.  *Id*.  There is no evidence in the record that Plaintiff was prevented from speaking further regarding the allegedly improper development.

17. On May 14, 2013, Plaintiff attended the Village Council meeting.  Plaintiff spoke during the "Public Input" period.  Plaintiff again complained about the impropriety of the Council's refusal to place him on the agenda.  *Doc. 16*, Ex. 1-H; *Doc. 17* at 23.  Notwithstanding his focus on the alleged denial of his right to speak, there is no evidence in the record that Plaintiff was prevented from speaking about the allegedly improper development.

## IV.   ANALYSIS

Defendants seek summary judgment on all claims.  They argue that Plaintiff cannot establish the constitutional violation necessary for a § 1983 claim or the elements of a civil conspiracy claim under § 1985.  Moreover, as to the individual Defendants, they argue that they are entitled to qualified immunity because Plaintiff has not established a constitutional violation.  Finally, they contend that Plaintiff's claims for declaratory judgment and injunctive relief fail as a matter of law. *See generally doc. 16.*

### A.   Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff who must clear two hurdles to defeat the [defense].  The plaintiff must demonstrate, on

the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (citations omitted).

**B.      Plaintiff's First Amendment Agenda Claim for Monetary Damages**

Plaintiff argues that, under the Resolution, once he made a conforming request to be placed on the official agenda of a Council meeting, the Village Council was obligated to honor his request.  When the Village Council refused to do so because, as he alleges, they disliked what he was going to say, he contends that they implemented an unconstitutional, content-based restriction on his speech.  Defendants respond that they did not put him on the official agenda at the advice of counsel Defendant Bryant because his speech addressed the subject of ongoing litigation.   Further, they assert that the Resolution's restrictions on a citizen being placed on the official agenda are not unconstitutional because they are content- and viewpoint-neutral and because Plaintiff was able to speak during the public input portion of the Council hearings.

In circumstances such as the instant case, First Amendment doctrine addresses restraints on speech according to the nature of the selected forum.   Before attempting to identify the nature of the forum, I must identify the speech restriction about which Plaintiff complains.  As noted above, Plaintiff's first count is directed at the council's refusal to put him on its agenda.  Oftentimes, a council's refusal to put a citizen on the agenda operates as a denial of an opportunity to speak at the meeting because the

council restricts speakers to items on the agenda.  *See e.g. White v. City of Norwalk*, 900

F.2d 1421, 1425 (9th Cir. 1990); *Jones v. Heyman*, 888 F.2d 1328, 1329-32 (11th Cir. 1989);

*Pesek v. City of Brunswick*, 794 F. Supp. 768, 782 (N.D. Ohio 1992); *Smith v. City of*

*Middletown*, 2011 WL 3859738 (D. Conn. Sep. 1, 2011); *Webb v. City of Joliet*, 1999 WL

350829 (N.D. Ill. May 19, 1999).  However, in this case, it had no such effect.  Instead,

regardless of whether an individual or topic was "on the agenda," a citizen was

permitted to address the council during the "Public Input" time.  Indeed, Plaintiff

himself was permitted to address the council during the "Public Input" period as he

saw fit on several occasions.  Consequently, the denial of Plaintiff's request to be placed

on the agenda did not exclude him from speaking on his selected topic at the council

meeting.  *Cf. Good News Club v. Milford Central School*, 533 U.S. 98, 106 (2001) ("The

standards that we apply to determine whether a State has unconstitutionally **excluded a**

**private speaker from use of a public forum** depend on the nature of the forum.")

(emphasis added).

    One can also consider the nature of Plaintiff's claim from a different angle – what

does "forum" mean in this context?  Plaintiff repeatedly asserts that Defendants,

through the Resolution, created a designated public forum.  *Doc. 17* at 9-14.  Perhaps

this is true.  But if so, the designated public forum thus created is the council meeting

itself – not the agenda thereof.  The flaw in Plaintiff's agenda-focused argument is

apparent in his Response because, in order to maintain this focus, he is forced to assert

that his "target audience, as demonstrated by each communication [Plaintiff] generated, was the Village Council agenda itself." *Id*. at 13. But, of course, the agenda is not an "audience." The Council members and the other citizens at the meeting are the audience. And, notwithstanding the fact that he was not placed on the agenda, he was permitted to address both of those audiences on his selected topic in the forum of the council meeting. Thus, the council's refusal to place Plaintiff on its agenda, in and of itself, was not a restraint on his speech.

This is not to say that the denial had no consequence. As Plaintiff notes, because he was not placed on the agenda, his speech during the public input section would be subject to the guidelines governing "Public Input." For Plaintiff to prevail on Count 1, he must show that those guidelines unconstitutionally restricted his speech.

In his argument on Count 1, Plaintiff points to three specific "Public Input" restrictions which impermissibly restrained his speech: (1) the limitation of five minutes; (2) the prohibition on "question and answer exchanges between speaker and council;" and (3) the fact that "illustrative aids" are not "contemplate[d]." *Doc. 17* at 14-15. The last "restriction" can be rejected immediately. Perhaps most "Public Input" speakers do not use illustrative aids, but the Resolution contains no prohibition against them and Plaintiff provides no other evidence of such a prohibition. The second noted restriction also cannot form the basis of Plaintiff's First Amendment claim. Whatever the First Amendment protects, it does not create an affirmative obligation on a public

14

official to respond to a citizen's exercise of free speech.  Moreover, even if he had been placed on the agenda, there would have been no requirement, under the Constitution or the Resolution, for the Council to engage with Plaintiff.  In other words, the prohibition on **Council members** making comments toward Plaintiff is not a restriction on **Plaintiff's** freedom of speech.

In the end, the denial of Plaintiff's request to be placed on the agenda led to only one cognizable restriction of which he complains – the five-minute limitation.  Under *Shero v. City of Grove*, 510 F.3d 1196, 1202-03 (10th Cir. 2007), this limitation is not unconstitutional.  In *Shero*, the Court considered whether a three-minute limitation imposed on speakers at city council meetings violated the First Amendment.  The Court noted that "[u]nder our precedent, it is not entirely clear whether a city council meeting should be treated as a 'designated public forum' or a 'limited public forum.'"  *Id*. at 1202.  Nonetheless, the Court held that it "need not decide" that issue because "the time limitation [of three-minutes] satisfie[d] the more stringent strict scrutiny standard."  *Id*. at 1203.  The Court based this holding on the city council's undeniable interest in "promot[ing] orderly and efficient meetings," and the available alternatives such as appearing in a local newspaper and circulating flyers.  Each rationale applies in the instant case.  Pursuant to *Shero*, the five minute limitation applicable to Plaintiff's speech at the council meeting was constitutional.

Plaintiff rejects the applicability of *Shero* because, unlike the plaintiff in *Shero*, he claims he "was subject to prior restraint on the basis of the content of his message." *Doc. 17* at 11.  In other words, Plaintiff alleges that the only reason that he was subject to the speech restrictions was because he was denied a place on the agenda, and that he was denied a place on the agenda because of what he wanted to say.  Implicitly, Plaintiff claims that if he had been placed on the agenda, then he would have been permitted to speak for 25 minutes, using illustrative aids, and with a meaningful question and answer period between him and the council members.  But, because of the council's unwillingness to hear his message, he was relegated to a 5 minute monologue during the Public Input period.  Plaintiff relies on a false dichotomy, or at least one for which he fails to present any evidence.

Taking the facts in the light most favorable to Plaintiff, he properly requested to be placed on the agenda.  Plaintiff argues that his placement on the official agenda was *required* provided he made a conforming request under the Resolution.  Even assuming such,[10] placement on the agenda by no means guarantees the elaborate presentation sought by Plaintiff.  In fact, the Resolution would have permitted the Council to place Plaintiff on the agenda yet still place any reasonable time/manner restriction on his speech as it considered appropriate.  The Constitution would not have been violated if

---

[10] It does not appear that the applicable Resolutions provide any such guarantee.  In fact, they simply state that the Village Clerk, Village Manager, and Mayor will review the request and "determine[] if the item will be placed on the agenda…."  *See e.g., Doc. 16*, Ex. 1-A, ¶ 1-A(4)(a).

those reasonable restrictions included a five-minute restriction on Plaintiff's

presentation nor if the Council members declined to engage in a question and answer

period with Plaintiff.  As it turns out, though the Council members declined to place

Plaintiff on the agenda, they permitted him double the time of other citizens to make a

presentation on his desired topic during the public input period.  *Doc. 1*, Ex. G.

Plaintiff's First Amendment rights were not violated by Defendants' refusal to

place him on the official agenda.  He was permitted to speak at any council meeting on

his requested topic during the "Public Input" period subject only to a constitutional

time limit.  In fact, he did address the Council on four separate occasions including one

where the Council granted him double the otherwise applicable maximum time.

Because the undisputed facts demonstrate that Plaintiff's First Amendment rights were

not violated as alleged in Count 1, I recommend dismissal of Count 1 with prejudice as

to all Defendants.

### C.     Plaintiff's Civil Conspiracy Claim

Plaintiff's second count alleges that each of the individual Defendants, Gus

Raymond Alborn, Irma Devine, Debi Lee, and Daniel Bryant, conspired in

contravention of 42 U.S.C. § 1985 to violate his First Amendment rights by improperly

denying Plaintiff a place on the official agenda with the knowledge that their actions

violated the terms of the operative Resolution.

Section 1985 is composed of three different subsections.  Since Plaintiff has not specified the subsection under which he brings his § 1985 claim, I shall assess his allegations under all three subsections.  Subsection 1985(1) prohibits conspiracy "to prevent by force, intimidation, or threat, any person from holding an office under the United States or from discharging the duties thereof."  A viable § 1985(1) cause of action requires allegations of class-based or racial discriminatory animus."  *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984).  Under § 1985(2), Plaintiff must plead that the individual Defendants "'conspire[d] to deter, by force, intimidation, or threat, any party or witness' from attending or testifying in a federal court."  *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1125 (10th Cir. 1994) (emphasis omitted).  A plaintiff seeking recovery for a private conspiracy in violation of § 1985(3) must show "(i) a conspiracy, motivated by racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom."  *Archuleta v. City of Roswell*, slip op., 2012 WL 4950324, at *5 (D.N.M. Sept. 30, 2012).

Section 1985 allegations of conspiracy must be pled with specificity.  *Brever*, 40 F.3d at 1126.  Nowhere does Plaintiff allege that the individual Defendants' actions were motivated by racial or class-based animus as required for a claim under § 1985(1) or (3).  Nor does Plaintiff provide any evidence that would support such an inference. The absence of such an allegation or evidence to support such an inference is a

sufficient basis on which to dismiss Plaintiff's cause of action.  *See, e.g., Santistevan*, 732 F.2d at 118.  As to Section 1985(2), Plaintiff has failed to allege any facts, or set forth any evidence, showing that the individual Defendants conspired with the intent to interfere with a party or witness attending or testifying in federal court.  Without such allegations, Plaintiff cannot sustain a claim under Section 1985(2).

Because Plaintiff has not pled facts nor set forth the evidence necessary to support a claim for conspiracy under Section 1985, I recommend this claim be dismissed with prejudice as to all Defendants.

## D.   Plaintiff's Request For Declaratory Relief

As a form of alternative relief, Plaintiff in Count III requests two declarations from the Court: first, that Section 1 of the Resolution, regarding placement of speakers on the official agenda, is unconstitutional, and second, that the "negative mention" provision of the Public Input section of the Resolution is an unconstitutional prior restraint on speech.

### 1.   Section 1 of the Resolution is Not Constitutionally Overbroad or Vague

Defendants seek summary judgment on Plaintiff's request for declaratory relief because Plaintiff's First Amendment claim in Count 1 fails.  *Doc. 16* at 14.  As to Plaintiff's challenge to Section 1 of the Resolution, Defendants are correct.  Plaintiff contends that Section 1 of the Resolution is unconstitutional on two bases: first, because by not setting forth specific time, place, or manner restrictions, a reasonable person

would not understand the limiting parameters of his conduct, and second, because the Resolution gives "unbridled" discretion to government officials to determine who will be placed on the official agenda.  *Doc. 1* ¶¶ 93-95.  As such, Plaintiff challenges it on both overbreadth and vagueness grounds.

A statute restricting speech is overbroad when its "very existence may cause others . . . to refrain from constitutionally protected speech or expression."  *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).  An overbreadth challenge is always treated as a facial challenge.  *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005).  In order for a regulation to be unconstitutionally vague, it must either "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"; or it must "authorize[] or even encourage[] arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Plaintiff bears the burden of demonstrating, based upon the law and facts, that substantial overbreadth exists. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

When evaluating an overbreadth challenge, the court's "first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct".  *Hoffman Estates v. Flipside*, 455 U.S. 489, 494 (1982).  It is here that Plaintiff's challenge to Section 1 fails.  Section 1 deals only with placing an item on the Council's agenda.  However, as discussed above, the failure to be placed on the agenda results in no unconstitutional restriction to a citizen's right to speak before the Council.  Not only

20

does the Resolution not limit speakers to topics on the agenda, but it expressly provides

that "[p]ublic that would like to speak at the Council meeting on an item that is not on

the agenda … will be provided the opportunity for input during the Public Input

portion of the meeting."  *See e.g., Doc. 16*, Ex. 1-A, ¶ 1(B)(5).  As long as the Council does

not limit public remarks to the agenda or unconstitutionally restrict "Public Input,"

rules about being placed on the agenda cannot unconstitutionally restrict speech.

In the alternative, Plaintiff asserts that, because there are no parameters to guide

officials in when to deny someone the opportunity to be on the agenda, the Resolution

is unconstitutionally vague.  The First Amendment protects speakers from arbitrary and

discriminatory enforcement of vague standards.  *National Endowment for the Arts v.

Finley*, 118 S. Ct. 2168, 2179 (1998).   A law will be void for vagueness when it subjects

the exercise of constitutional rights to "unascertainable standard[s]." *Coates v. City

Cininnati*, 91 S. Ct. 1686, 1688 (1971).

Intrinsic to any vagueness analysis, though, is the threat of some punishment for

failure to comply with the law.  As the Supreme Court explained, "because we assume

that man is free to steer between lawful and unlawful conduct, we insist that laws give

the person of ordinary intelligence a reasonable opportunity to know what is

prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not

providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The threat

of some punishment is necessary because "the most important factor affecting the

clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) (noting "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe").

In the instant case, there is no civil or criminal punishment for somehow failing to comply with the procedure laid out to request placement on the agenda. If your request is insufficient, then you are not placed on the agenda. One would still be permitted to submit a second request or simply speak during the public input portion. Neither of these consequences is a penalty likely to dissuade an ordinary person, who was intending to request placement on the agenda, from doing so. *Cf. Grayned*, 408 U.S. at 109 ("Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.") (quotations omitted).

Because Plaintiff has failed to demonstrate that Section 1 of the Resolution is unconstitutionally overbroad or vague, I recommend denying the declaratory judgment sought by Plaintiff and granting summary judgment to Defendants on this claim.

### 2.   The "negative mention" provision of Section 5 may be an unconstitutional prior restraint on speech

Plaintiff's second request for a declaratory judgment is focused on the provision of Section 5 which forbids anyone speaking during the public input section of the

Council meeting from making any "negative mention … of any Village personnel, staff, or the Governing Body." *Doc. 16*, Ex 1-D, ¶5(F)(f).  Violations of this provision will mean that the speaker will be "declared out of order and will immediately cease comment." *Id.*, ¶5(F)(i).  Plaintiff contends this provision violates the First Amendment on its face and asks the Court to enter judgment declaring it so.  *Doc. 1* ¶¶ 98-100.

Defendants do not specifically discuss this particular request in their motion for summary judgment.  Instead, they rely on the argument that, because Plaintiff's First Amendment claim fails as a matter of law, so must his request for declaratory judgment. *Doc. 16* at 14.  But this request for declaratory judgment stands alone from his argument on Count 1 which focuses on placement on the agenda and did not rely on the alleged defect with the "negative mention" provision.  Consequently, my rejection of Count 1 says nothing about the merits of this request.

Defendants also note that the power to issue declaratory judgments must lie in some independent basis of jurisdiction.  Here, Plaintiff's claim for declaratory judgment is based upon his claim that the "negative mention" provision violates the First Amendment.  Federal question jurisdiction exists in a declaratory judgment action if the potential suit would arise under federal law.  *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996).  Thus, I conclude that jurisdiction for this claim would exist even assuming dismissal of Count 1 and 2.

Defendants do not dispute the speech at the council meeting is protected.  The "negative mention" provision constitutes a restriction on Plaintiff's speech, and this restriction on speech is content-based.[11] "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 109 S. Ct. 2746, 2754 (1989). Here, the speech at issue is not regulated "without reference to the content of the regulated speech." *Id.* (citation omitted).   Rather, it is precisely *because* the content of the speech is "negative" with regards to the Village personnel, staff, or the Governing Body that it is regulated.  *See Leventhal v. Vista Unified Sch. Dist.,* 973 F. Supp. 951, 957 (S.D. Cal. 1997) (district bylaw prohibiting criticism of District employees is a content-based regulation)*; Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 730 (C.D. Cal. 1996) (district policy prohibiting "charges or complaints" against District employees is content-based prohibition).

Content-based speech restrictions are subject to a strict scrutiny analysis.  *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989)*, see also R.A.V. v. City*

---

[11] Normally, the next step of the Court's analysis would be to determine whether the Council meeting is a limited or designated public forum, a determination the Tenth Circuit has not yet reached. *Shero v. City of Grove, Okla.,* 510 F.3d 1196, 1202 (10th Cir. 2007).  However, because I find that the restriction at issue here is content-based, the type of forum is irrelevant because in either case, a strict scrutiny analysis applies. *Ark. Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 677 (1998) (holding that strict scrutiny applies to restrictions on speech in a designated public forum); *International Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678 (1992) (explaining that strict scrutiny applies to a content-based restriction in a limited public forum).

*of St. Paul, M.N.*, 505 U.S. 377, 395 (1992) (quotations and citations omitted) ("danger of censorship" presented by a facially content-based statute requires that that instrument be employed only where it is "necessary to serve the [government's] asserted [compelling] interest"). "The First Amendment does not permit [the government] to impose special prohibitions on those speakers who express views on disfavored subjects." *R.A.V.*, 505 U.S. at 391.  Finally, I note that "in the ordinary case it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory."  *Sorrell v. IMS Health Inc.*, 1010 S. Ct. 2653, 2667 (2011) (citing *R.A.V.*, 505 U.S. at 382).

Defendants defend this provision on the basis that the restriction on "negative" speech is analogous to the restrictions on speech during a town council meeting held to be constitutional in *Scroggins v. City of Topeka, KS*, 2 F. Supp. 2d 1362 (D. Kan. 1998). *Doc. 16* at 12.  But *Scroggins* is readily distinguishable.  The impugned regulation in *Scroggins* forbade "[a]ny person" from "making personal, rude or slanderous remarks, or [from becoming] boisterous, while addressing the Council" and required that any person doing so would  "be requested to leave the meeting and may be at once barred by the presiding officer from further audience before the Council." *Id.* at 1372.  The district court there noted that this regulation's restriction, unlike the Resolution at issue here, was content-neutral because "the Council's rule prohibits personal attacks on anyone, not just City employees or other City officials."  *Id.* at 1371.  Further, the

25

regulation was sufficiently narrowly tailored by being designed to address a particular type of speech that was both irrelevant to the governmental business being conducted and disruptive to that business.  *Id.* at 1376-77.

*Scroggins* provides the perfect foil in demonstrating narrow tailoring.  Had the Resolution here been targeted at "personal, rude, or slanderous" remarks against anyone, it would likely survive the strict scrutiny analysis.  But it is not.  Instead, it restricts "negative mention" of government employees and elected officials.  It would seem that any strong criticism of the Village government would fall within its ambit.  Such a restriction is antithetical to the First Amendment.  *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 14 (1976) ("The First Amendment affords the broadest protection to . . . political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people'") (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)); *Schenck v. Pro–Choice Network*, 117 S. Ct. 855, 858 (1997) (noting that "commenting on matters of public concern" is a "classic form[] of speech that lie[s] at the heart of the First Amendment").[12]

As Defendants have failed to establish that they are entitled to judgment as a matter of law as to Plaintiff's request for declaratory relief against the "negative

---

[12] I note here that Plaintiff's "Public Input" remarks were subject to this apparently unconstitutional restriction when perhaps they would not have been if he had been placed on the agenda.  However, this possibility does not change my conclusion that his claims in Count One fail as a matter of law.  Nowhere in his Response does Plaintiff point to this "negative mention" restriction as a material distinction between "Public Input" speech and "Agenda" speech.  *See doc. 17* at 1-15.

mention" provision of Section 5, I recommend that their motion for summary judgment as to that claim be denied.

### E.     Plaintiff's Request for Injunctive Relief

In addition to the declaratory relief sought, Plaintiff also seeks both a mandatory and prohibitive injunction requiring all citizen requests for agenda placement to be honored if they comply with the Resolution, and prohibiting the Village Council from enforcing the Resolution's "negative mention" provision.

A permanent injunction is extraordinary remedy that, in the absence of a statutory entitlement, is granted at the Court's discretion and should not be granted unless the right to its imposition is clearly established.  *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir. 1964).  To obtain a permanent injunction, a party "bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."  *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).  With respect to the irreparable harm requirement, "the main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy."  *Goldammer*, 326 F.2d at 270.

Defendants argue they are entitled to summary judgment on the claims for injunctive relief because Plaintiff cannot succeed on the merits and because he cannot

show irreparable harm if an injunction is not issued.  Plaintiff fails to respond to these arguments in any way.

As to the issue of citizen requests to be placed on the agenda, I have concluded there is no constitutional violation.  Therefore, Plaintiff has failed to show he can prevail on the merits.

As to the restraint imposed by the "negative mention" provision, I have concluded that Plaintiff may establish that it is unconstitutional.  Nonetheless, Plaintiff has presented no evidence or argument that he would suffer irreparable harm without an injunction.  In fact, should this court enter a declaratory judgment that this portion of the Resolution is unconstitutional, Plaintiff would receive an adequate legal remedy.

Because Plaintiff has not shown that he can establish a right to the imposition of an injunction as to either challenged provision, I recommend denying the injunctive relief sought by Plaintiff and granting summary judgment to Defendants on this claim.

V.    CONCLUSION

For the forgoing reasons, I recommend that the Court find that Defendants are

entitled to judgment as a matter of law as to Count 1 – Prior Restraint of Speech, Count

2 – Civil Conspiracy, and Count 4 - Injunctive Relief.  With respect to Count 3 –

Declaratory Relief, I recommend the Court find that Defendants are entitled to

judgment as a matter of law as to Section 1, but not as to the "negative mention"

provision of Section 5.

UNITED STATES MAGISTRATE JUDGE

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF
**SERVICE** of a copy of these Proposed Findings and Recommended Disposition they
may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. §
636(b)(1).  **A party must file any objections with the Clerk of the District Court within
the fourteen-day period if that party wants to have appellate review of the proposed
findings and recommended disposition.  If no objections are filed, no appellate
review will be allowed.**