**FOR THE UNITED STATES DISTRICT COURT**
**IN THE DISTRICT OF NEW MEXICO**

WILLIAM N. GRIFFIN,

Plaintiff,

v. CIV. No. 13-799 JB/GBW

DANIEL A. BRYANT, *et al.*

Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court on the Motion for Summary Judgment filed by Daniel Bryant and Daniel A. Bryant, P.C. (hereinafter "Bryant Defendants"). *Doc. 44*. I have reviewed the parties' briefing (*docs. 55, 58*), have reviewed the relevant law and have held a hearing (*doc. 62*) on the matter. Being fully advised, I recommend that the Court GRANT the Motion.

## I. FACTUAL BACKGROUND

Plaintiff William Griffin brings suit under 42 U.S.C. § 1983 for violation of his First Amendment rights. The action arises from his legal representation of Rosalie Ivey and her family (collectively "Ivey family") in challenging a permit granted to the Ivey family's next-door neighbors in 2009. *Doc. 1* ¶¶ 20, 22, 28. In July 2008, Ruidoso suffered a severe flood, causing the destruction of the dirt road adjacent to the Ivey property. *Id.* ¶ 22. After the flood, the Ivey family, in an effort to avoid a recurrence of

the incident, sought to reroute the road when it was rebuilt in order to move it away from the flood plain. *Id.* ¶ 23. While undertaking this project, the Ivey family commissioned a study on the property in question that indicated the parameters of the Federal Emergency Management Agency (FEMA) "100 year flood-plain" that affected their property. *Id.* ¶ 24.

On or about May 9, 2011, the Village of Ruidoso issued a permit to the Ivey family's next-door neighbor that allowed the neighbor to build a "two-foot wide, four-foot high, seventy-foot long" water diverter that the Ivey family believed would divert floodwater directly onto their property. *Id.* ¶¶ 28-30. Plaintiff, on behalf of the Ivey family, initially contacted Defendant Dan Bryant, an attorney for the Village of Ruidoso, via letter on December 16, 2011, stating his belief that this permit was not in compliance with FEMA regulations. *Id.* ¶ 31. Defendant Bryant responded on December 28, 2011, disagreeing with Plaintiff's allegations. *Id.* ¶ 32.

On at least three occasions during 2012, pursuant to the applicable Village of Ruidoso Village Council Resolution,[1] Plaintiff requested placement on the next Council meeting agenda to discuss this issue at the meeting. *Id.* ¶¶ 42, 56, 62-63. Each request was denied. *Id.* ¶¶ 45, 57; *see also doc. 1*, Ex. G. Nonetheless, Plaintiff had the opportunity to address the Council during the "Public Input" portions of any Council

---

[1] Throughout of the course of 2011 and 2012, the Village of Ruidoso passed four separate resolutions, beginning with Resolution 2011-02, addressing the procedures pertaining to Village of Ruidoso City Council meetings, as discussed in Section III (Undisputed Facts), *infra.* Each of these Resolutions, except as delineated in Section III and Section IV (Analysis), *infra*, is identical.

meeting. In fact, on at least four separate occasions, Plaintiff attended Council meetings and spoke during the "Public Input" portions. *See doc. 16*, Ex. 1-E, 1-F, 1-G, 1-H; *doc. 17* at 23. However, Plaintiff's comments at those meetings were focused on the denial of his agenda placement requests rather than the development issue. *Id*.

Plaintiff's Complaint charges that Defendants violated, and conspired to violate, his First Amendment rights by placing an unconstitutional prior restraint on his ability to speak at the Village of Ruidoso Council meetings when they failed to place him on the agenda despite his requests which complied with the relevant Council Resolution. His first cause of action alleges that Section 1 of the operative Resolution sets forth criteria for being placed on the official agenda, and that by failing to put Plaintiff on the agenda in spite of his conforming request, the Council subjected his speech to an unconstitutional prior restraint. In other words, Plaintiff argues that his First Amendment rights were violated simply by the Council's failure to put him on the official agenda, regardless of whether he was allowed to speak at another point in the meeting. His second cause of action alleges that the Defendants conspired to implement this illegal prior restraint. His third count is subdivided into two sections: the first seeks a declaration that the Resolution's provision regarding the placement of citizens on the official agenda (Section 1) is void for vagueness, and the second seeks a declaration that the "no negative mention" Public Input provision (Section 5) be found unconstitutional as censorship. His fourth count seeks an injunction (a) requiring all

citizen agenda placement requests be honored if they comply with the Resolution, and (b) prohibiting the enforcement of the "no negative mention" provision.

## II. PROCEDURAL BACKGROUND

Previously, all Defendants except for the Bryant Defendants (hereinafter "Ruidoso Defendants") moved for summary judgment on all counts. *See doc. 16*. After the motion was fully briefed (*see docs. 17, 19*), the undersigned submitted Proposed Findings and Recommended Disposition ("PFRD"). *Doc. 27*. In response, the Ruidoso Defendants and Plaintiff filed objections which were reviewed by the Court. *See docs. 28, 29*. Having reviewed the PFRD and the Objections, the Court partially adopted the PFRD, and granted in part and denied in part the Defendants' motion for summary judgment. *Doc. 30*. The Court granted Plaintiff's request for declaratory relief in Claim 3 and injunctive relief in Claim 4 as they relate to Section 5 of the Resolution, and dismissed all other claims in the Complaint as to the Ruidoso Defendants. *Id*.

In the instant motion, the Bryant Defendants "move this court for an Order dismissing Plaintiff's claims under the First Amendment and 42 U.S.C. § 1985; and finding that Plaintiff's claims for Declaratory Judgment and Injunctive Relief have been fully adjudicated." *Doc. 44* at 2. The basis of the Bryant Defendants' motion is the "law of the case" doctrine.

In essence, the Bryant Defendants seek to have the Court adopt the factual findings previously adopted from the PFRD. *See generally docs. 44, 62*. On the basis of

these previously-adopted facts, the Bryant Defendants argue that Plaintiff's claims under the First Amendment and the claims pursuant to 42 U.S.C. § 1985 against them should be dismissed for the same reasons they were dismissed as to the Ruidoso Defendants. *See doc. 44* at 7-14. The Bryant Defendants also seek a holding that the Court's earlier ruling fully adjudicated Plaintiff's claims for Declaratory Judgment and Injunctive Relief. *See id*. at 1-6.

With minor exceptions detailed below, Plaintiff does not object to the adoption of the factual findings previously adopted from the PFRD. *See doc. 62* at 2-3. Further, Plaintiff does not argue that additional facts are necessary to reach the legal issues as to the Bryant Defendants. *See docs. 55, 62*. Most importantly, he concedes that there are no factual distinctions which dictate a different result from the Ruidoso Defendants. *See doc. 62* at 2.

## III. UNDISPUTED MATERIAL FACTS

"Generally, the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case." *Mocek v. City of Albuquerque*, 3 F. Supp.3d 1002, 1046 (D.N.M. 2014) (quoting *Been v. O.K. Indus.*, 495 F.3d 1217, 1224 (10th Cir.2007). The Tenth Circuit has explicitly declined to "address under what circumstances findings of fact become the law of the case." *United States v. Monsisvais*, 946 F.2d 114, 115 n.2 (10th Cir. 1991). Certainly, there is debate on

the issue within the Circuit. *See Federal Deposit Ins. Co. v. Schuchmann*, 224 F. Supp.2d 1332, 1340 (D.N.M. 2002) ("factual findings, like legal determinations can establish the law of the case"), *contra Alpine Bank v. Hubbell*, 2010 WL 1258002, *9 (D. Colo. March 24, 2010). In the instant case, the undersigned need not resolve this question because, with minor exceptions addressed herein, the parties have agreed to the use of the previous factual findings. *See doc. 62* at 2-3. Those factual findings are as follows:

1. The Village Council is the governing body of the Village of Ruidoso**.** *Doc. 16* at 3.
2. On January 11, 2011, the Village Council passed Resolution 2011-02, which set forth the policies and procedures for meetings of the Village Council. *Doc. 16*, Ex. 1-A.
3. Section 1 of Resolution 2011-02 addresses the preparation of the agenda. It included a provision explaining how citizens could be placed on the official agenda of Village Council meetings, at Section 1(B)(4). This section explains that "public who wish to be placed on the regular agenda . . . must submit a detailed written summary of the items to be presented and discussed . . . . [A]t the pre-agenda meeting [of the Village Clerk and Mayor], it will be determined if the item will be placed on the agenda for the next meeting or it will be referred to Staff, Workshop, or Village Boards and Commissions." *Id.*

4. While the Resolution obviously envisions that items on the official agenda will be discussed in some fashion, there are no provisions which dictate how agenda items are discussed during the meeting.

5. Any individual who wants to address the Village Council at the meeting regarding an item that is not on the agenda has the opportunity to speak during the "Public Input" portion of the meeting.[2]

6. Speakers during the "Public Input" portion must follow the guidelines set out in Section 5 of the Resolution. *Id*., Section 5(I); *Doc. 16*, Ex. 1-D, Section 5(F)(f).[3] As relevant here, the guidelines require that the speaker: (1) is limited to five minutes,[4] and (2) may not make "negative mention of Village Personnel, or staff." *Id*.[5] Non-compliant speakers will be "declared out of order and will immediately cease continued comment." *Id*.

7. On September 13, 2011, the Village Council passed Resolution 2011-27, which superseded Resolution 2011-02. *Doc. 16*, Ex. 1-B.

---

[2] At the hearing, Plaintiff expressed a partial objection to this fact. His objection was based on two concerns. First, he noted that the first two denials of his request to be placed on the agenda were not accompanied with an explicit statement that he could speak in the Public Input portion. The undersigned agrees with that assertion. However, that distinction is recognized in Undisputed Facts #8, # 12, and #14, and thus forms no basis for an objection to the factual findings. Moreover, the Court has already concluded that this distinction is irrelevant. *See doc. 30* at 85. Second, Plaintiff objects because of his continued belief that the Agenda portion is a separate forum from the Public Input portion. Regardless of the merits of that argument, it does not actually dispute this fact.

[3] The operative Resolution has been modified several times through superseding Resolutions. Except as noted below, the relevant provisions remain the same except for organizational changes.

[4] As noted below, prior to the May 29, 2012, Resolution, the speakers were permitted an initial time of three minutes which could be expanded an additional two minutes with the consent of the Council. After that Resolution passed, speakers were simply given five minutes.

[5] The current Resolution has added "the Governing Body" to this list. *Doc. 16*, Ex. 1-D, Section 5(F)(f).

8. On January 20, 2012, Plaintiff requested placement on the agenda for the January 31, 2012 meeting. *Doc. 1* ¶ 42. Plaintiff indicated that he wished to discuss "the issue of development within the FEMA-defined floodplain." *Doc. 1*, Ex. A. Plaintiff indicated that he wanted to discuss what he saw as a conflict between FEMA regulations / state statutes, and "approvals granted by Village staff for significant development in the … floodplain." *Id.* Plaintiff sought to "deliver a 15 minute talk." The request was denied. *Id.* ¶ 45.

9. On March 12, 2012, the Village Council passed Resolution 2012-09, which was designed to supersede Resolution 2011-27. The relevant provisions remain unchanged. *Doc. 16*, Ex. 1-C.

10. On May 29, 2012, the Village Council passed Resolution 2012-16, which superseded Resolution 2012-09. *Id.*, Ex. 1-D. Portions of the relevant provisions described above were slightly modified, but remain materially similar.[6] Of note, speakers now would be allowed five minutes without the need for Council approval for the final two minutes. *Id.* ¶5(F)(g). Also, the "negative mention" prohibition was expanded to include "the Governing Body" as well. *Id.* ¶5(F)(f).

[6] Other less relevant changes included (i) a clarification that "Public Input" speakers could address matters that were included on the agenda as well as those which were not; and (ii) requirements about the residency of "Public Input" speakers. *Doc. 16*, Ex. 1-D, ¶¶ 1(B)(5); 5(F).

Finally, the Resolution clarified[7] that "the Governing Body or staff shall not comment or engage in discussion during the public input period." *Id*.

11. During August and September 2012, Plaintiff submitted letters to the editors of local newspapers describing his concerns that approvals granted by Village staff for significant development in the floodplain violated FEMA regulations and other laws. *Doc. 1* ¶¶ 54, 55. One of those newspapers, the Ruidoso Free Press, published the letter in its September 18, 2012, edition. *Id*. ¶ 55.

12. On September 24, 2012, Plaintiff made a request to be placed on the public agenda of the October 9, 2012 Council meeting. *Doc. 1* ¶ 56. Plaintiff asked to "make a presentation to the Village council focusing on the federal and state laws and regulations, and specific local ordinances, which must be adhered to in order for Ruidoso to comply with federal flood insurance program guidelines." *Doc. 1*, Ex. D. Plaintiff explained that he believed certain development approvals violated such rules. *Id*. Plaintiff asked to "deliver a 15-20 minute presentation." *Id*. The request was denied. *Id*. ¶ 57.

13. On November 13, 2012, Plaintiff attended the Village Council meeting. He spoke during the Public Input section stating that he had clients who owned property "affected by FEMA, State, and Local Ordinances" and complained he

[7] It appears that this restriction had been implicit through Section 4 which always provided that "[i]tems for discussion can only be inclusive and limited to those listed on the Agenda as presented before Council and the public. This is to comply with the proper public notice under the State of New Mexico Open Meetings Act." *Doc. 16*, Exs. 1-B, 1-C, 1-D.

was denied the right to make a presentation to the Village Council. *Doc. 16*, Ex. 1-E. Notwithstanding his focus on the alleged denial of his right to make a presentation, there is no evidence in the record that Plaintiff was prevented from addressing the main points from his proposed presentation.[8]

14. On November 14, 2012, Plaintiff made a request to be placed on the public agenda of the December 11, 2012 Village Council meeting. *Doc. 1* ¶¶ 62, 63. The request echoed his September request only now he sought to "deliver a 20-25 minute presentation." *Doc. 1*, Ex. F. While the request to be placed on the agenda was denied, Plaintiff was advised that the Village Council would schedule him for ten minutes (double the otherwise permitted amount) during the "Public Input" period. *Doc. 1*, Ex. G. Aside from cautioning Plaintiff not to make personal allegations of wrongdoing against Village employees, Plaintiff was not prohibited from addressing the main points from his proposed presentation.[9] *Id*.

15. On December 11, 2012, Plaintiff attended the Village Council meeting. Plaintiff spoke during the "Public Input" period. However, instead of taking advantage of the ten minutes allotted to him to make a presentation on the development

[8] At the hearing, Plaintiff expressed an objection to this fact. Plaintiff objects because of his continued belief that the Agenda portion is a separate forum from the Public Input portion. Regardless of the merits of that argument, it does not actually dispute this fact.

[9] At the hearing, Plaintiff expressed an objection to this fact. Plaintiff objects because of his continued belief that the Agenda portion is a separate forum from the Public Input portion. Regardless of the merits of that argument, it does not actually dispute this fact.

issue, Plaintiff again complained about not being put on the agenda. *Doc. 17* at 23. Plaintiff argued that ten minutes was insufficient for his presentation, yet he also found fault with giving him preferential treatment by allowing him the additional five minutes. *Doc. 16*, Ex. 1-F. Notwithstanding his focus on the alleged denial of his right to make a presentation, there is no evidence in the record that Plaintiff was prevented from addressing the main points from his proposed presentation.[10]

16. On January 29, 2013, Plaintiff attended the Village Council meeting. Plaintiff spoke during the "Public Input" period. He "warned [the] Council about the potential of legal problems regarding structures that were allowed to be built within the 100-year floodplan, despite a clear admonition from the Federal Emergency Management Administration (FEMA)…." *Doc. 16*, Ex. 1-G. Plaintiff also again complained that his freedom of speech was being denied by the Council's refusal to put him on the agenda. *Id*. There is no evidence in the record that Plaintiff was prevented from speaking further regarding the allegedly improper development.

17. On May 14, 2013, Plaintiff attended the Village Council meeting. Plaintiff spoke during the "Public Input" period. Plaintiff again complained about the

[10] At the hearing, Plaintiff expressed an objection to this fact. Plaintiff objects because of his continued belief that the Agenda portion is a separate forum from the Public Input portion. Regardless of the merits of that argument, it does not actually dispute this fact.

impropriety of the Council's refusal to place him on the agenda. *Doc. 16*, Ex. 1-H; *Doc. 17* at 23. Notwithstanding his focus on the alleged denial of his right to speak, there is no evidence in the record that Plaintiff was prevented from speaking about the allegedly improper development.

## IV. LAW OF THE CASE

"Generally, the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case." *Been v. O.K. Indus.*, 495 F.3d 1217, 1224 (10th Cir.2007); *see also Mocek v. City of Albuquerque*, 3 F. Supp.3d 1002, 1046 (D.N.M. 2014). "Unlike vertical stare decisis, however, 'the rule is a flexible one that allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power.'" *Mocek*, 3 F. Supp.3d at 1046 (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 823 (10th Cir.2007)). The doctrine is a "presumption, one whose strength varies with the circumstances." *Wagnon*, 476 F.3d at 823. "Nevertheless, a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive." *Arizona v. California*, 460 U.S. 605, 619 (1983) (citations omitted).

"To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*,

440 U.S. 147, 153-54 (1979). Therefore, "it takes exceptionally narrow circumstances for the court not to follow the law of the case when the doctrine applies." *Bishop v. Smith*, 760 F.3d 1070, 1082 (10th Cir. 2014) (internal quotation marks and citation omitted). Those exceptions are: "(1) when new evidence emerges; (2) when intervening law undermines the original decision; and (3) when the prior ruling was clearly erroneous and would, if followed, create a manifest injustice." *Id*. at 1086.

## V. PLAINTIFF'S FIRST AMENDMENT AGENDA CLAIM (COUNT 1)

In the order granting the Ruidoso Defendants' summary judgment on Count 1, the Court concluded that "Governing Body meetings – and the public input portions in particular – constitute a limited public forum for First-Amendment purposes." *Doc. 30* at 54-58. Nonetheless, the Court held that Plaintiff suffered no infringement of his First Amendment rights when the Council refused to put him on the agenda, because he was allowed to speak during the Public Input section of the meetings. *Doc. 30* at 84-86; *see also doc. 27* at 12-17. The Court found that "the only cognizable restriction [Plaintiff] suffered by the Governing Body not placing him on the agenda was the imposition of a five-minute time limit applicable to the public input period but not to the regular agenda." *Doc. 30* at 85. "Because such a time limit is constitutional even under the strict scrutiny standard, [Plaintiff] suffered no unconstitutional restriction." *Id*. at 85-86. Therefore, the Court granted summary judgment to the Ruidoso Defendants on Count 1.

Plaintiff agrees that there is no argument for the result as to the Bryant Defendants to be different than the result as to the Ruidoso Defendants.[11] *See doc. 62* at 2. Plaintiff has provided no new evidence which has emerged since the Court's ruling on the Ruidoso Defendants' motion. Further, Plaintiff has pointed to no intervening law which undermines the original decision. Finally, Plaintiff has not demonstrated that the prior ruling was clearly erroneous or would, if followed, create a manifest injustice. Therefore, I recommend that the Court grant summary judgment to the Bryant Defendants on Count 1 pursuant to the "law of the case" doctrine.

## VI. PLAINTIFF'S CIVIL CONSPIRACY CLAIM UNDER SECTION 1985 (COUNT 2)

In the PFRD for the Ruidoso Defendants' motion for summary judgment, the undersigned concluded that Plaintiff failed to "allege that the individual Defendants' actions were motivated by racial or class-based animus as required for [such] a claim…. [and failed to] provide any evidence that would support such an inference." *Doc. 27* at 18. For that reason, the undersigned recommended dismissal with prejudice as to all Defendants." *Id*. at 19. In response, Plaintiff "concede[d] that his conspiracy claim under 42 U.S.C. § 1985 is defective, and not plead [sic] with the specificity to go

---

[11] Plaintiff's written response states that the "Bryant Defendants argue that the doctrine of the 'law of the case' be applied here, which would have the Court ignore the facts which apply uniquely to the Village Attorney, whose written communications with the Plaintiff are offered as concrete, tangible evidence of the denial of Plaintiff's right to speak." *See doc. 55* at 4. However, Plaintiff does not cite to the record regarding these "ignored facts," let alone explain why the "ignored facts" would legally distinguish the Bryant Defendants from the Ruidoso Defendants. Given that and the explicit concession at the hearing, any argument along these lines is waived.

forward." Subsequently, the Court granted the Ruidoso Defendants summary judgment as to Count 2.

As the Bryant Defendants argue in their motion, Count 2's deficiencies apply equally to them. *See doc. 44* at 6. Plaintiff apparently agrees, as he did not address the arguments regarding Count 2 in his response. *See generally doc. 55*.

Therefore, I recommend, under the "law of the case" doctrine, that the Court grant summary judgment to the Bryant Defendants as to Count 2.

## VII. PLAINTIFF'S REQUESTS FOR NON-MONETARY RELIEF (COUNTS 3 & 4)

In Count 3, Plaintiff seeks a declaratory judgment from the Court that portions of the Resolution are unconstitutional. *Doc. 1* at 17-19. In Count 4, Plaintiff seeks an injunction against the Village of Ruidoso from enforcing the unconstitutional portions of its Resolution. *Id*. at 19.

In its earlier order, the Court issued a declaratory judgment on Count 3 that Section 5Ff of the Village of Ruidoso Resolution 2012-16 was unconstitutional. *Doc. 30* at 54-83. The Court also enjoined Defendant Village of Ruidoso and its agents from enforcing that provision. *Id.* at 83-88. The Bryant Defendants are not asking that the Court reconsider its decision on either point. Instead, they merely ask the Court to find that Plaintiff's claims for non-monetary relief contained in Counts 3 and 4 are fully adjudicated, as applied to them. Plaintiff did not dispute the arguments regarding Counts 3 and 4 in his response. *See generally doc. 55*.

Both Count 3 and Count 4 are directed at Defendant Village of Ruidoso and not at the Bryant Defendants. *See doc. 1* at 17-19. Moreover, to the extent that they are directed at the Bryant Defendants, the Court has adjudicated them. *See doc. 30* at 88 ("Defendant Village of Ruidoso and its agents are enjoined from enforcing Section 5Ff of the Village of Ruidoso Resolution 2012-16") (emphasis added). Therefore, the undersigned recommends that the Court find that Counts 3 and 4 are fully and finally adjudicated as to the Bryant Defendants.

## VIII. CONCLUSION

For the forgoing reasons, I recommend that the Court hold that the Bryant Defendants are entitled to judgment as a matter of law as to Count 1 – Prior Restraint of Speech, and Count 2 – Civil Conspiracy. With respect to Count 3 – Declaratory Relief , and Count 4 - Injunctive Relief, I recommend the Court find that the claims are fully and finally adjudicated as they apply to the Bryant Defendants.

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**